## In re LIPMAN.
### No. 11700.

District Court, D. Connecticut.
April 17, 1931.

Hungerford & Saxe, of New Britain, Conn. (William C. Hungerford, of New Britain, Conn., of counsel), for bankrupt.

Leo V. Gaffney, of New Britain, Conn., for Commercial Trust Co. of New Britain, a creditor.

David L. Nair, of New Britain, Conn., for trustee.

Julius Apter, of Hartford, Conn., for Acme Upholstery Co.

HINCKS, District Judge.

In this matter a report of the special master sets forth that an offer was made by the bankrupt of a composition of 20 per cent. to common creditors and payment in full of preferred claims together with administration expenses, which offer was accepted by a majority in number and amount of creditors who had filed proofs of claim.

On hearing before the referee on the bankrupt's application for a confirmation of said composition, objection was made by the Acme Upholstery Company, a creditor, on the ground that the terms of the offer were inadequate, and apparently by way of corroboration of this objection, this creditor made written offer, in the name of its counsel, to purchase the entire assets of the estate, paying therefor:

(a) All administration expenses;

(b) All preferred claims properly proved and allowed, in full; and

(c) "A dividend of 30% on each and every unsecured claim which may be properly proved and allowed against said estate."

This offer was accompanied by a deposit of $2,000 on account.

The special master further reports that the Acme Upholstery Company was ready, willing, and able to deposit with the trustee a further sum of $14,000 to guarantee its performance of said offer. On these facts the special master recommends that the petition for the confirmation of the 20 per cent. composition be dismissed, and that the offer of the Acme Upholstery Company, set forth above, be accepted.

Counsel for the bankrupt have argued that the offer of the Acme Upholstery Company should not be accepted because of the fact that it puts the purchaser in a position wherein it may speculate as to the administration of the estate. As I understand it, the claim is that the offer of purchase on terms expressed not in any specific amount, but only by a percentage of the provable and proved claims, puts the purchaser in such a position that it absorbs the entire benefit of every claim which shall ultimately be disallowed, in whole or in part, to the exclusion of other creditors who would ordinarily derive that benefit proportionately. And so this objection to the pending offer seems squarely to raise the question whether the assets of a bankrupt estate may be sold by acceptance of an offer expressed in terms of a percentage dividend to creditors instead of a specified amount.

It is obvious, of course, that an offer of purchase for a specified amount, for its intelligent consideration by the creditors, and, in turn, by the referee and court, requires only a consideration of the value of the assets, and, in such consideration, creditors, referee, and court alike have the benefit of the appraisal made under the Bankruptcy Act (11 USCA). On the other hand, an offer based on a percentage to creditors whose claims shall be proved and allowed involves the further consideration (in cases such as this where the offer is made before all such claims have been proved) of a preliminary appraisal or analysis of all the claims. This is so because, unfortunately, experience proves that there often results a wide disparity between the claims as listed in the schedules and the claims as ultimately allowed. Consequently, the possibility of such a disparity must be considered if offers are to be entertained which are expressed in terms of percentage dividend on the total claims.

However, it is unquestionably the practice with regard to compositions to entertain offers based upon a percentage to creditors. And this practice prevails notwithstanding the absence of any express authority therefor in the Bankruptcy Act. Bankr. Act § 12 (11 USCA § 30). See also numerous cases cited in notes 13 and 14, title 11, USCA § 30, showing that offers of composition may be confirmed even though made on a basis other than cash.

Since such is the recognized practice in compositions, I fail to see why offers to purchase may not similarly be predicated upon the ultimate yield to creditors. Nothing contained in the Bankruptcy Act seems to prohibit the entertainment of such offers. To be sure, it is provided in section 70b of the act (11 USCA § 110(b): "Real and personal property shall, when practicable, be sold subject to the approval of the court; it shall not be sold otherwise than subject to the approval of the court for less than 75 per centum of its appraised value."

At first glance, the passage quoted might seem to indicate that sales are authorized only upon offers for specified amounts, thus readily comparable with the appraised value. On reflection, however, I cannot find anything in this or any other provision of the act which even implies a prohibition of sales on offers based on a percentage dividend to creditors. To be sure, the provision quoted may require the referee to estimate the total claims and, by computation, to translate the percentage offer to its equivalent sum, for purposes of comparison with the appraised value. Where claims are vague and uncertain, it may well be that the referee will find it impossible to ascertain whether or not a given percentage offer is the equivalent of 75 per cent. of the appraised value. In such cases he would doubtless withhold his approval of the sale, or possibly refer the offer

to the court which, under the provision quoted, may approve irrespective of the relation between the offer and the appraised value.

Nor do the cases seem to indicate that percentage offers may not properly be accepted. On the contrary, the case most nearly in point seems to approve such an offer. In re Schloss (D. C.) 257 F. 876. In that case it appeared that a purchaser had offered for the assets a sum equal to 100 per cent. of all preferred claims and 20 per cent. "of the unsecured liabilities owing by the said bankrupts to their general creditors." The referee certified to the court a question as to whether this offer required the purchaser to pay the specified dividend to creditors whose claims had not been filed and allowed. The court instructed the referee that the dividend was payable only to creditors whose claims had been filed and allowed. The propriety of the percentage offer had not apparently been questioned and received no discussion in the opinion. But it will be observed that the order of the court was such that the propriety of the offer was at least indirectly involved and approved.

It thus appears that neither the act itself nor the cases disapprove percentage offers on principle. Looking at the matter from the standpoint of practice, I can see nothing inherently unsound in such an offer. It is true that offers couched in such terms may require creditors and, in turn, the referee and the court, as in the usual case of a composition, to scrutinize the list of liabilities for evidence of padding. Ordinarily, however, the examination of the bankrupt is sufficient to disclose fictitious or padded claims. And if such an offer involves the labor of a computation in order to obtain a check upon the value of the assets, on the other hand it has a certain convenience in that it enables creditors to know definitely what they will obtain upon their claims. This, it seems to me, is an item of considerable practicable importance, for I believe that, as a general rule, in considering any question of sale, creditors want first of all to know just what the sale will bring them, and are only mildly interested in the question whether the terms are such that the purchaser is paying a fair price for the assets. And if, indeed, the creditors are interested in a comparison of the offer with the value of the assets, they can make their own comparison by the computation suggested above.

What I have already said indicates the answer to the specific objection to the percentage offer made in this case. True it is that where a percentage offer has been accepted and later one or more claims are disallowed the purchaser alone reaps the benefit. But all creditors and the referee as well, before the offer is accepted, have opportunity to examine and appraise the claims. If some of the claims are of doubtful validity, quite possibly and quite properly the percentage offer may discount such questions of validity by much the same theory as that which permits the trustee, with the approval of the referee, to compromise a doubtful claim. Instead of improper speculation, the question is rather one of ordinary business hazard. Nor are the hazards all in favor of the purchaser. Indeed in this very case, it was suggested on the argument that the purchaser here already repents his bargain.

And so, in practice as well as in principle, I find nothing fundamentally wrong with the basis of the offer in question. This is not to say that in many cases, and especially where there is suspicion of collusion between the bankrupt and the purchaser, the creditors and the referee on the hearing for confirmation may not properly object and conclude that the liabilities are so vague that a percentage offer might prove entirely inadequate. In such cases, doubtless, objections would ensue from the creditors, and confirmation would be withheld by the referee.

This however, is not such a case. Here the creditors have already expressed themselves in favor of a 20 per cent. composition. Certainly it is to their advantage that the referee should dismiss the petition for a 20 per cent. composition and accept an offer netting 30 per cent. to common creditors. Since nothing in principle or practice prevents, the recommendation of the special master is approved, the petition for the composition is dismissed, and the offer in behalf of the Acme Upholstery Company is accepted. Ordered accordingly.